UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00109-GNS

JAMIE ARTERBURN                                                          PLAINTIFF

v.

WAL-MART STORE, INC.;
SAM'S EAST, INC.;
HEATHER HARRISON; MIKE COFFEY;
DAVID HALL; and DAVID MARTIN                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 7), Defendants' Motion to Dismiss Counts 3 through 12 (DN 12), and Plaintiff's Motion to Remand (DN 21). The motions are ripe for decision. For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss (DN 12) and **DENIES** Plaintiff's Motion to Remand. The Court also **DENIES** Defendants' Motion to Dismiss (DN 7) **AS MOOT**.[1]

### I.      BACKGROUND

This action arises from Plaintiff, Jamie Arterburn's 2011 and 2013 terminations from employment by Defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Sam's East, Inc. ("Sam's Club") (collectively "Defendants"). (Am. Compl., DN 17). Additionally, Plaintiff makes various claims against Defendants' agents in their individual capacities. (Am. Compl. ¶¶ 4-8, 328-334). Specifically, Arterburn claims she suffered retaliation and abuse while working for Defendants after reporting alleged fraudulent practices at a Bowling Green Sam's Club store and suffered instances of alleged sexual harassment while working for Wal-Mart. (Am. Compl. 6-10).

---

[1] After Defendants filed the initial motion to dismiss, Plaintiff filed her Amended Complaint. Accordingly, the initial motion is moot.

Plaintiff alleges she was terminated for refusing to engage in a fraudulent scheme in which display models would be sold at full price and concurrently reported as defective to the manufacturers to obtain refunds. (Am. Compl. 36-37).

Defendants removed the underlying action to this Court on September 11, 2015, on the basis of diversity of citizenship. (Defs.' Notice of Removal, DN 1). Plaintiff moves to remand this action to Warren County Circuit Court claiming complete diversity does not exist. (Pl.'s Mot. to Remand 1, DN 21). Defendants also move to dismiss Counts 3 through 12[2] of the Amended Complaint. (Defs.' Mem. in Supp. of Mot. to Dismiss for Failure to State a Claim Counts 3 through 12, DN 12-1 [hereinafter Defs.' Mot.).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

To survive dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "But the district court

---

[2] The Amended Complaint does not contain a Count 9.

2

need not accept a bare assertion of legal conclusions." *Id*. (internal quotation marks omitted) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV. DISCUSSION

### A. Plaintiff's Motion to Remand

Plaintiff argues that the Court does not have jurisdiction over this matter because complete diversity does not exist in this case under 28 U.S.C. § 1332. (Pl.'s Mot. to Remand 1). Specifically, Plaintiff argues that individual Defendant, David Hall ("Hall") is a resident of Kentucky and therefore destroys diversity. (Pl.'s Mot. to Remand 1). In response, Defendants claim Hall has been fraudulently joined in this matter for the purpose of avoiding diversity jurisdiction. (Defs.' Resp. to Mot. to Remand 2, DN 26).

"Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citation omitted). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). Specifically, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Alexander*, 13 F.3d at 949). "In making such a prediction, the district court must resolve all disputed questions of fact and all

ambiguities in the controlling state law in the non-removing party's favor." *Reed v. Gulf Coast Enters.*, No. 3:15-CV-00295-JHM, 2016 WL 79998, at *2-4 (W.D. Ky. Jan. 6, 2016) (citing *Coyne*, 183 F.3d at 493)).

The Court finds that Hall has been fraudulently joined in this matter. Plaintiff asserts a single claim against Hall, a retaliation claim under KRS 344.280. (Am. Compl. 51). "To state a prima facie case of retaliation under KRS 344.280, a plaintiff must establish that: (1) [s]he engaged in an activity protected by Title VII; (2) the exercise of [her] civil rights was known by the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Reed*, 2016 WL 79998, at *2 (citing *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)).

While Plaintiff alleges that Hall took an adverse employment action against her and that she engaged in a protected activity, she has not alleged that Hall had any knowledge of the protected activity. (Am. Compl. 51). Since Plaintiff makes no allegation Hall *knew* that she had engaged in a protected activity, she cannot establish the causal connection needed to establish a prima facie case for retaliation. *Reed*, 2016 WL 79998, at *3 (lack of knowledge by defendant that plaintiff engaged in a protected activity was fatal to plaintiff's KRS 344.280 claim). Thus, there is no reasonable basis for a claim for retaliation against Hall and the Court finds Hall has been fraudulently joined. Therefore, the Court maintains jurisdiction under 28 U.S.C. § 1332, and this motion is denied.

**B.     Defendants' Motion to Dismiss**

In Defendants' motion, they seek dismissal of Counts 3 through 12 of the Amended Complaint. (Defs.' Mot. 1). In the Amended Complaint, Plaintiff alleges invasion of privacy,

intentional infliction of emotional distress, wrongful discharge under the Kentucky Consumer Protection Act ("KCPA") and Kentucky Blue Sky Law, promissory estoppel, and negligent retention. (Am. Compl.).

### 1.     *Invasion of Privacy Based on Intrusion into Seclusion (Count 3)*

Defendants first seek to dismiss Plaintiff's invasion of privacy claim based upon intrusion into seclusion. (Defs.' Mot. 3). In order to prevail on this claim, Plaintiff must show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2002) (citing Restatement (Second) of Torts § 652(B) (1977)). Defendants cite the Restatement (Second) of Torts for the proposition that a "physical intrusion" is required in order to state a claim for intrusion into seclusion. (Defs.' Mot. 4). The Court disagrees with this assertion. Specifically, the Restatement (Second) of Torts states invasion of privacy may be based upon an intentional intrusion, "physically or otherwise." Restatement (Second) of Torts § 652(B). Therefore, the lack of a physical invasion in this case is not dispositive.

Nevertheless, the Court finds the conduct in this case was not highly offensive to a reasonable person. Defendants raised questions about Plaintiff's romantic relationship with a supervisor while working at Wal-Mart. (Pl.'s Resp. 3-4). Romantic involvement between employees and supervisors violated Sam's Club policy and therefore was relevant to Plaintiff's employment. (Defs.' Mot. 2). Plaintiff alleges she was asked "where do you all have sex" and "how many times have you had sex" during the investigation of Plaintiff's relationship. (Pl.'s Resp. 4). While these questions were perhaps inartful, they were reasonable within the context of investigating a known workplace violation. Asking relevant questions within the context of a

5

workplace investigation does not constitute conduct highly offensive to a reasonable person. *See Zhang v. W. Ky. Univ.*, No. 2011-CA-000287-MR, 2012 WL 4464448, at *10 (Ky. App. Sept. 28, 2012) (asking an employee if she was pregnant did not constitute invasion of privacy when the question was relevant to workplace safety, as the employee worked around chemicals); *Pascouau v. Martin Marietta Corp.*, No. 98-1099, 1999 WL 495621, at *6 (10th Cir. July 14, 1999) (requests for information cannot be considered an invasion of privacy even when such questions pry into one's sex life). Plaintiff frames these questions as "strictly related to her personal life," but this is not the case here. (Pl.'s Resp. 4). Plaintiff was engaged in a romantic relationship with a supervisor in violation of workplace policy and this became known to her supervisors. At this point her romantic relationship became a matter of her employer's concern. Therefore, Plaintiff's claim for invasion of privacy based upon intrusion into seclusion is dismissed.

### 2. *Intentional Infliction of Emotional Distress (Count 4)*

Defendant argues Plaintiff's intentional infliction of emotional distress ("IIED") or outrage claim is preempted by Plaintiff's claims under KRS Chapter 344. (Defs.' Mot. 5). "[W]hen a plaintiff prosecutes a KRS Chapter 344 claim and an outrageous conduct claim concurrently, the former preempts the latter." *Kroger Co. v. Buckley*, 113 S.W.3d 644, 646 (Ky. App. 2003). Therefore, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Where another cause of action allows the recovery of emotional distress damages, an IIED claim will not lie.

Plaintiff alleges that her claim arises from "facts apart" from her KRS 344 claim and therefore is not preempted. (Pl.'s 5). The Court disagrees. Plaintiff claims the "retaliatory

actions" of Defendants led to her emotional distress and that these actions were the result of exposing Defendants' allegedly fraudulent behavior. (Am. Compl. ¶ 341). Plaintiff alleges these same facts in her wrongful termination claims in that she was subject to abuse as a result of reporting fraudulent behavior. (Am. Compl. 57-59). Since KRS 344 allows for damages for emotional distress, Plaintiff cannot concurrently make an IIED claim. *Buckley*, 113 S.W.3d at 646. Thus, Plaintiff's IIED claim is dismissed.

### 3. *Wrongful Termination for Refusal to Violate the KCPA (Counts 5 and 6)*

Wal-Mart next alleges that Plaintiff's wrongful termination claim based on the KCPA must be dismissed. (Defs.' Mot. 7). Under Kentucky law, the tort of wrongful discharge recognizes that an employer terminates an employee in violation of public policy: "1) [w]here the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment; or 2) [w]hen the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010) (citing *Grzby*, 700 S.W.2d at 402). "[A]n employee claiming wrongful discharge due to a refusal to violate the law must show an affirmative request to him/her by the employer to violate the law." *Burnett v. Pinelake Reg'l Hosp., LLC*, No. 5:09-CV-00024, 2010 WL 231741, at *2 (W.D. Ky. Jan. 14, 2010) (alteration in original) (internal quotation marks omitted) (quoting *Welsh v. Phoenix Transp. Servs., LLC*, No. 2007-CA-001231-MR, 2009 WL 2475206, at *4 (Ky. App. Aug. 14, 2009)). Since Plaintiff does not allege that Defendants affirmatively requested that Plaintiff engage in behavior that may plausibly violate the KCPA, her claim must fail as a matter of law. *Id.* Therefore, Plaintiff's claim for wrongful termination under the KCPA is dismissed.

### 4. *Wrongful Termination Claim in Violation of the Kentucky Blue Sky Law (Counts 7 and 8)*

Defendants further claim that Plaintiff's wrongful termination claim under the Kentucky Blue Sky Law must be dismissed because the Plaintiff cannot plausibly state such a cause of action. (Defs.' Mot. 11). The Kentucky Blue Sky Law is "virtually identical" to its federal counterpart, Rule 10(b)(5). *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 916-17 (6th Cir. 2007). The elements of a Blue Sky violation are: "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation." *Id.* (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The Blue Sky Law only applies to securities which are defined as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, life settlement investment, voting-trust certificate, certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest in or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

*Brantley v. Harris*, No. 3:10-CV-30-S, 2010 WL 2889663, at *2 (W.D. Ky. Jan. 21, 2010) (quoting KRS 292.310(18)).

As with Plaintiff's wrongful termination claim under the KCPA, Plaintiff does not assert that Defendants ever affirmatively requested that she engage in allegedly fraudulent behavior. This is fatal to Plaintiff's claim. *Burnett*, 2010 WL 231741, at *2 (citation omitted).

Furthermore, the Court finds that Plaintiff has not established a Rule 10(b)(5) claim. Instead of asserting that Defendants have violated Rule 10(b)(5) against other stockholders, she asserts Defendants violated 10(b)(5) against *Plaintiff*. Plaintiff, however, has not alleged that a

Blue Sky violation in her Complaint or Amended Complaint and instead relied only on a wrongful termination claim *based upon* a Blue Sky violation. The Court finds Plaintiff cannot plausibly state a claim based upon the Blue Sky Law.

Plaintiff asserts the Defendants engaged in fraudulent conduct by selling used display models at full price, while receiving refunds on these models from the respective manufacturers. (Pl.'s Resp. 12). While Plaintiff alleges she purchased stock and thus fulfills the "security" element of a Blue Sky claim, she cannot plausibly state a claim for loss in this case. Plaintiff essentially claims the price of Defendants' stock is being inflated by the price of Defendants' allegedly fraudulent practices and therefore has suffered a loss. (Pl.'s Resp. 12). Merely buying a stock at an inflated price does not constitute an economic loss under the Blue Sky Act. *Broudo*, 544 U.S. at 338. Thus, Plaintiff's claim for wrongful termination under the Blue Sky Act is dismissed.

### 5. *Promissory Estoppel Claim (Counts 10 and 11)*

Defendant asserts Plaintiff's claim for promissory estoppel must fail because Plaintiff cannot point to any promise Defendants made to Plaintiff which indicates an assurance of continued employment.[3] (Defs.' Mot. 13-14). A claim for promissory estoppel in Kentucky requires proof of: "(1) a promise; (2) the promisee reasonably relies upon the promise by acting or forbearing to act upon the strength of it; (3) the promisor, at the time of making his promise, foresees or expects that the promisee would act or forbear in reliance upon it; and (4) enforcement of the promise is necessary to avoid an injustice." *Davis v. Siemens Med. Sols. USA,*

---

[3] Plaintiff has chosen not to respond to Defendants' Motion to Dismiss her promissory estoppel claim until after the Court's disposition of Plaintiff's Motion to Remand, as such a ruling is "premature." (Pl.'s Resp. 13-14). The Court disagrees and this claim is ripe for adjudication. Plaintiff offers no reason why she can respond to Defendants' Motion to Dismiss regarding all other counts, but is unable to respond regarding the promissory estoppel claim. The Court finds Defendants' Motion to Dismiss as to the promissory estoppel claim is ripe for decision.

*Inc.*, 399 F. Supp. 2d 785, 795 (W.D. Ky. 2005) (citation omitted). In this case, the three alleged promises Plaintiff bases her claims upon are Wal-Mart's "Open-Door Communications" policy, "Coaching for Improvement" policy, and a comment by a Wal-Mart employee that she could have her job back if she would "fix" the problems at a Sam's Club location. (Am. Compl. ¶¶ 166, 379, 392). The Open Door Communication policy gives employees the "ability to voice their concerns to all levels of management," and the Coaching for Improvement policy appears to create a three-strikes warning system before employees are terminated. (Am. Compl. ¶¶ 379, 392).

Plaintiff presents no support in either her response or Amended Complaint which allows her claim to survive a motion to dismiss. Plaintiff cannot survive a motion to dismiss by reciting "a formulaic recitation" of promissory estoppel elements without presenting any facts in support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Noticeably absent from Plaintiff's Amended Complaint are facts plausibly indicating exactly *how* she acted or failed to act, in reliance upon Wal-Mart's policies. Plaintiff never alleges what detriment she suffered as a result of those policies. Further, the Court cannot conceivably find injustice in this case because Plaintiff has not alleged any injury she endured as a result of Wal-Mart's alleged promises. The lack of facts plausibly indicating how Plaintiff detrimentally relied on Defendants' alleged promises and how she suffered injustice are fatal to her claim. *Harris v. Burger King*, 993 F. Supp. 2d 677, 692 (W.D. Ky. 2014) (failure to plead facts indicating reliance and injustice warranted dismissal). Thus, Plaintiff's promissory estoppel claims must be dismissed.

      **6.**    *Negligent Retention Claim (Count 12)*

Finally, Defendants assert that Plaintiff's negligent retention claim must be dismissed. (Defs.' Mot. 15). "[A]n employee cannot sue her employer for negligent supervision or

retention." *Gatlin v. Shoe Show, Inc.*, 3:14-CV-00446-TBR, 2014 WL 3586498, at *6 (W.D. Ky. July 21, 2014) (citation omitted). *See also Grego v. Meijer, Inc.*, 239 F. Supp. 2d 676, 683 (W.D. Ky. 2002) ("Based on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee, this Court concludes that the exclusivity provision of Kentucky's Workers' Compensation Act bars negligent supervision claims between an employer and employee."). The doctrine of negligent retention applies only to *third parties* harmed by the actions of a defendant's agents, not defendant's employees. Plaintiff was an employee of Wal-Mart and Sam's Club at the time she alleges she was harmed by fellow employees. (Am. Compl. 63-64). Therefore, a negligent retention cause of action is not available to Plaintiff and her claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. the Motion to Dismiss Counts 3 through 12 filed by Defendants Wal-Mart Stores, Inc. and Sam's East, Inc. (DN 12) is **GRANTED;**

2. Plaintiff's Motion to Remand (DN 21) is **DENIED**; and

3. Defendants' Motion to Dismiss (DN 7) is **DENIED AS MOOT**.

Greg N. Stivers, Judge
United States District Court

July 6, 2016

cc: counsel of record